IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHARLES EUGENE MOORE, #297332, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CASE NO. 2:19-CV-612-WKW-CSC (WO) |
| LEROY JAMISON, *et al.*, | ) ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed on August 23, 2019, by Charles Eugene Moore, an indigent state inmate, challenging actions which occurred at Kilby Correctional Facility.  (Doc. 1).  He alleges that on July 11, 2019, Officer Leroy Jamison used excessive force against him in the kitchen.  He further alleges that on this same date Officer Joey Craig failed to protect him by providing insufficient security in the kitchen, as no officers were present on that date to prevent the attack.  (Doc. 1).

The named Defendants are Joey Craig, who is employed by the ADOC as a Correctional Lieutenant at Kilby, and Leroy Jamison, who is employed by the ADOC as a Correctional Officer at Kilby as the kitchen supervisor.   The Defendants filed a special report (Doc. 18, Exs. 1-14), which included relevant evidentiary materials in support, specifically affidavits, prison documents and medical records, addressing the claims presented by Moore.  In these documents,

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

Defendant Craig denies that he acted with deliberate indifference to Moore's safety needs and Defendant Jamison denies that he used excessive force against the Plaintiff.

After reviewing the special reports and exhibits, the court issued an order on January 28, 2020, requiring Moore to file a response to the Defendants' special report, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. These orders specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 19 at p. 3). Moore filed a response to this order. (Doc. 21). Pursuant to the directives of the order entered on January 28, 2020, the court now treats the Defendants' special report as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the Defendants.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the

case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape

the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Moore's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Moore has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the Defendants.

### III. FACTS

In his complaint, Plaintiff claims that on July 11, 2019, at around 3:40 a.m., "Officer Leroy Jamison used excessive force hitting me two or three times in the back of my head as I was putting my tray up in the kitchen and mased {sic} me as I was walking out the door." (Doc. 1 at 3). Later, in his response to the Defendants' Special Report filed March 13, 2020, Plaintiff claims Defendant Officer Jamison "rushed me out of the kitchen . . . hit me in the back of my head twice . . . began trying to trip me . . . stepped in front of me and hit me in my face and then mased me." (Doc. 21-1 at 1). The Use of Force Inmate Written Statement completed by Plaintiff on July 11, 2019, confirms the extent of Plaintiff's allegations of excessive force, stating, "I was putting my tray up and I was assaulted by correctional officer Jamison hitting me two times in the head . . .and mased me while I was walking out the door.". . .. (Doc. 18-6).

The Incident Report, received by Jimmy Thomas, On-call Official, Warden II, states as follows:

 "On July 11, 2019, Correctional Officer Leroy Jamison was assigned as the Kitchen Officer.  At approximately 3:50 a.m., Officer Jamison was monitoring the feeding of chow and ordered several inmates to exit the Dining Hall and report to their assigned living areas.  Inmate Charles Moore B/297332 (A1-65A), because argumentative and refused to exit the Dining Hall.  Officer Jamison ordered inmate Moore to exit the Dining Hall and started walking behind inmate Moore in order to escort him out of the Kitchen, near the Gate # 5 exit door of the Kitchen.  Inmate Moore turned around, yelled at Officer Jamison 'you want me to leave the Kitchen motherfucker!' and struck Officer Jamison in the facial area with a closed fist.  Officer Jamison radioed 'Code Red' indicating an Officer needs all available assistance.  Inmate Moore picked up a tray of spoons and threw it towards Officer Jamison.  Inmate Moore picked up a metal water pitcher and started swinging it towards Officer Jamison.  Officer Jamison retrieved his chemical agent and administered a short burst of Sabre Red to inmate Moore's facial area.  At approximately 3:51 a.m., Correctional Lieutenant Joey Craig and Correctional Sergeant David Rogers entered the Kitchen.  Lieutenant Craig ordered inmate Moore to lay on the floor, Inmate Moore threw a pitcher on the floor and complied with the order.  Lieutenant Craig and Sergeant Rogers restrained inmate Moore without any further incident.  Inmate Moore was escorted to P-ward for a medical assessment.   Inmate Moore was decontaminated with running water and moving air.  At approximately 3:45 a.m. LPN Heather Blue completed an Inmate Documentation Form on inmate Moore.  Inmate Moore's Body Chart Documentation Form did not note any injuries.  At approximately 4:10 a.m. LPN Blue completed a Body Chart Documentation form on Officer Jamison.  Photos were taken and statements obtained.  The On-Call Official, Warden II Jimmy Thomas was notified of the incident.  A First Report of Injury was completed on Officer Jamison and emailed to the appropriate personnel.  Officer Jamison's Inmate Body Chart Documentation Form did not note any injuries.  Officer Jamison did not wish to seek any further medical treatment.  Inmate Moore was moved from A1-65A and reassigned to the Restricting Housing Unit, Cell E6-1A.  Inmate Moore was charged with assault with a weapon on a person associate with ADOC.  No further action."

(Doc. 18-2 at p.1).  Furthermore, Kilby Inmate Edward Garrett, listed as a witness in the Incident

Report, completed a July 11, 2019, statement attesting as follows:

 "Officer Jamison was advising Inmate to exit the kitchen area and return to receiving for transfer and Inmate became aggressive and picked up a metal ice jug and proceeding to attack officer Jamison and in return officer Jamison sprayed inmate with pepper spray."

(Doc. 18-9).  Officers Craig, Rodgers and Jamison's statements and affidavits, (Docs. 18-4, 18-

10, 18-11, 18-3, 18-8 and 18-12), Plaintiff's body charts (Doc. 18-5) and photos of the Plaintiff

(Doc. 18-13 and 18-14) attached to the Defendants' Special Report confirm the information

contained in the Incident Report (Doc. 18-2) and Garrett's Inmate Statement. (Doc. 18-9).

## IV.   DISCUSSION

### A. ABSOLUTE IMMUNITY

To the extent Moore requests monetary damages from the defendants in their

official capacities, they are entitled to absolute immunity.  Official capacity lawsuits are "in all

respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S.

159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by
> private parties against States and their agencies [or employees]. There are two
> exceptions to this prohibition: where the state has waived its immunity or where
> Congress has abrogated that immunity. A State's consent to suit must be
> unequivocally expressed in the text of [a] relevant statute. Waiver may not be
> implied.  Likewise, Congress' intent to abrogate the States' immunity from suit
> must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and

citations omitted).  Thus, a state official may not be sued in his official capacity unless the state

has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v.

Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see

Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that
> "the State of Alabama shall never be made a defendant in any court of law or
> equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this
> prohibits Alabama from waiving its immunity from suit.

6

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala*., 916 F.2d 1521, 1525 (11th Cir. 1990)).  In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).   Thus, the Court will now address the Plaintiff's claims brought against Defendants in their individual capacities.

## B. DELIBERATE INDIFFERENCE

1. **<u>Standard of Review</u>.**  "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotation marks and citations omitted).   Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health and safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it.  *Id*. at 828.  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the

official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. "Within [a prison's] volatile community, prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984) (internal quotation marks omitted). The Eleventh Circuit has, however, consistently stressed that a "prison custodian is not the guarantor of a prisoner's safety." *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990); *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313 (11th Cir. 2005) (same). "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks and citation omitted). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim. *Farmer*, 511 U.S. at 837. "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

   The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell*, 748 F.3d at 1099. With

respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner."  *Marsh v. Butler County, Ala*., 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . .  The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments. . . .  [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 837-38 (internal quotation marks omitted); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'"  *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . .  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be

drawn that a substantial risk of serious harm exists – and the prison official must
also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). A defendant's subjective knowledge

of the risk must be specific to that defendant because "imputed or collective knowledge cannot

serve as the basis for a claim of deliberate indifference. . . . Each individual Defendant must be

judged separately and on the basis of what that person [knew at the time of the incident]."

*Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury

must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act

can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)

(internal quotation marks and citations omitted). Thus, "[m]erely negligent failure to protect an

inmate from attack does not justify liability under section 1983." *Id*. Even where a prison

official perceives a serious risk of harm to an inmate, the official "may still prevail if he

responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v.*

*McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (internal quotation marks and citation omitted). In

sum, prison officials cannot be held liable under the Eighth Amendment unless there is an

objectively substantial risk of harm to an inmate, the defendants have knowledge of this

substantial risk of harm and with this knowledge consciously disregard the risk. *Farmer*, 511

U.S. at 837.

    **2.** <u>**Failure to Protect**</u>**.** Plaintiff alleges that Defendant Officer Joey Craig failed to

protect him from the excessive force allegedly used by Defendant Officer Leroy Jamison against

him on July 11, 2019 at Kilby. To survive the properly supported motion for summary judgment

filed by the Defendants, Moore must first demonstrate an objectively substantial risk of serious

harm existed to him and "that the defendants disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), citing *Caldwell*, 748 F.3d at 1100. If he establishes these objective elements, Moore must then satisfy the subjective component. This requires Moore to show "that defendant subjectively knew that [he] faced a substantial risk of serious harm. The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear ***felt by [the] [p]laintiff***." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir.2003) (emphasis added). Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference." *Id*. at 1349 (quotations omitted).).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original). Based upon the court's careful review of all the evidence, the court concludes that the Plaintiff fails to even allege, much less offer any proof, that Defendant Correctional Lieutenant, Joey Craig was aware he was at risk for suffering an assault from prison guard Leroy Jamison. Rather, the Plaintiff claims that he was harmed because there were no ADOC personnel assigned to the Kilby kitchen on July 11, 2019, other than Defendant Leroy Jamison, against whom Plaintiff alleges excessive force. (Doc. 1 at 3). Accordingly, the Court concludes that summary judgment is due to be granted in favor of Defendant Craig on the claim alleging he acted with deliberate indifference to Moore's safety.

### 3. **Excessive Force**

Plaintiff claims that Defendant Officer Leroy Jamison used excessive force against him on July 11, 2019 at Kilby.  Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment.  *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal quotations and citations omitted).  "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'"  *Sims v. Artuz*, 230 F.3d 14, 22 (2nd Cir. 2000) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component.  *Hudson*, 503 U.S. at 8.  The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind."  *Id.*  (internal quotations omitted).  To establish the subjective element, a plaintiff must demonstrate the "necessary level of culpability, shown by actions characterized by wantonness."  *Sims*, 230 F.3d at 21.  With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."  *Hudson*, 503 U.S. at 8.  In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury."  *Id*. at 4.  "Injury and force . .

12

. are only imperfectly correlated, and it is the latter that ultimately counts.  An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

Summarizing the excessive force standard in the prison context, the Eleventh Circuit wrote:

> [u]nder the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).  To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996).  From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002).

Recently, the Eleventh Circuit applied the *Whitley* factors in an a §1983 action brought by a pro se prisoner for injuries he received during the inspection of his cell after he failed to follow an order from the defendant prison officers. *Miles v. Jackson,* 757 F. App'x. 828 (11th Cir. 2018).  In *Miles,* the court identified the five factors relevant in determining whether force

was applied "maliciously or sadistically" as "(1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the threat 'reasonably perceived by the responsible officials,' . . . (4)'any efforts made to temper the severity of the use of a forceful response,'" and "(5) [t]he absence of serious injury." *Id.,* at 829 citing *Hudson,* 503 U.S at 7; quoting *Whitley,* 475 U.S. at 321.

Moreover, the Eleventh Circuit has stated that "[w]hen evaluating whether the force used was excessive, we give broad deference to prison officials acting to preserve discipline and security." *Pearson v. Taylor*, 665 F. App'x 858, 863 (11th Cir. 2016) (citing *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990); *Hudson*, 503 U.S. at 7 (holding that courts are to "give a wide range of deference to prison officials acting to preserve discipline and security."). In addition, the determination "must not be made in the glow of hindsight." *Griffin v. Troy State Univ.,* 128 F. App'x 739, 742 (11th Cir. 2005) (citation omitted). "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett*, 898 F.2d at 1533. Generally, correctional officers are authorized to use force when a prisoner "fails to obey an order. Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force." *Pearson*, 665 F. App'x at 864 (internal citation omitted).

In considering the application of the *Whitley* factors to the instant case, the court recognizes at the outset that there is no dispute the Plaintiff refused to follow an order to exit the dining hall. (Doc. 18-2) Specifically, the evidence shows that on July 11, 2019, about 3:50 a.m., Defendant Officer Jamison was monitoring chow and he ordered several inmates to exit the

dining hall and return to their living areas. Plaintiff became argumentative and refused to exit. (Doc. 18-2, 18-3, 18-9). The Plaintiff does not dispute that he was given an order to return to his living dorm which he refused to obey. Rather, he claims that when he was putting his tray up in the kitchen, Jamison hit him two or three times in the back of the head. Although Defendant Jamison disputes this statement, the court must accept the Plaintiff's statement as evidence to be considered on a motion for summary judgment. *See Sears v. Roberts,* 922 F. 3d 1199, 1206 (11th Cir. 2019).

Indeed, the undisputed evidence further demonstrates that when Jamison instructed Plaintiff to exit the kitchen, Plaintiff became argumentative and aggressive, Jamison and Plaintiff had contact and Plaintiff swung a metal pitcher at Jamison. Then, Jamison sprayed Plaintiff in the face with mace. (Docs. 18-4, 18-10, 18-11, 18-3, 18-8, 18-9 and 18-12). At some point during this contact, Plaintiff claims that Jamison knocked him in the head twice as he was putting up his tray and attempted to trip him on his way out of the kitchen. Jamison denied this contact and testified that Plaintiff hit him in the face closed handed and broke his glasses. Thus, even assuming the Defendant Officer Jamison used force on the Plaintiff as he claims, the undisputed evidence demonstrates and the court concludes that an inmate's failure to follow orders from correctional officers justifies the use of some force. Indeed, the Eleventh Circuit has affirmed the "need" for force where the plaintiff first failed to obey an order and then "evaded [the officer's] attempt to get him to comply". *Miles,* 757 F. App'x at 830 citing *Bennett,* 898 F.2d at 1533 ("The need for the use of force [was] established by the undisputed evidence that [the prisoner] created a disturbance.")

The question then becomes whether the need to ensure the plaintiff's compliance with the order justified the amount of force used. *Miles, id.* In this specific instance, the undisputed evidence shows that Plaintiff became argumentative and aggressive and swung a pitcher at Defendant Officer Jamison. Defendant Officer Jamison responded with couple of knocks to the head and ultimately administered a short burst of mace to the Plaintiff's face. In *Miles*, the Eleventh Circuit recognized that the "use of a takedown" which included the prisoner being tackled onto his bed and then onto the floor and being slammed against a wall was not excessive when the prisoner "failed to obey a jailer's orders." 757 F. App'x at 829-30. Furthermore, the court notes the Plaintiff fails to present any evidence that the force used against him was malicious or sadistic. Indeed, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley,* 475 U.S. at 320-21. Thus, the court concludes that the questions of the need for force and its proportionate use are answered in favor of the Defendant Officer Jamison.

The court also concludes that the third and fourth *Whitley* factors weigh against the Plaintiff. It is undisputed that Plaintiff was aggressive and assaulted Officer Jamison by swinging a pitcher when he was asked to exit the kitchen. Officer Jamison claims that Plaintiff hit him in the face closed handed and broke his glasses. The Plaintiff does not specifically deny this acusation. Thus, the court concludes that Defendant Officer Jamison could reasonably perceive the Plaintiff presented some threat. Finally, the court concludes that Defendant Officer Jamison's use of force was tempered because Defendant Jamison only administered a short burst

of mace to Plaintiff's facial area and any knocks to the Plaintiff's head were incidental to the aggression demonstrated by the Plaintiff.

Finally, the court considers the extent of the injury suffered by the Plaintiff and notes that he does not allege any specific injury.  Indeed, the body chart taken on the Plaintiff at 3:45 a.m. on July 11, 2019, shows only "red eyes bilaterally" and "no issue with ambulation or gait, breaths easy and unlabored. No physical injury noted."  (Doc. 18-50).  Further, the undisputed evidence demonstrates that immediately following the incident, Plaintiff "was decontaminated with running water and moving air."  (Doc. 18-2). Accordingly, the court concludes that the medical evidence fails to demonstrate a serious injury to Plaintiff.  *Miles,* 757 F. App'x at 830 (No "serious injury" where the only treatment was Tylenol).  Accordingly, the court concludes that summary judgment is due to be granted to Defendant Jamison on the Plaintiff's excessive force claim.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The Defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the Defendants.

3.  This case be DISMISSED with prejudice.

4.  No costs be taxed.

On or before **May 26, 2022**, the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.  Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 12th day of May, 2022

/s/    Charles S. Coody
UNITED STATES MAGISTRATE JUDGE

18